The jurisdiction of the court of equity in this case cannot, we think, be seriously questioned. Admitting that by actions of trover, assumpsit, or account, the administrator might have remedy at law against one who acted as executor under a will of which the probable has been recalled, because it was not a will, yet there must also be a jurisdiction here. The remedy in equity is more complete in matters of account, which is the ground of the equitable cognizance of such cases. The court of equity has peculiar facilities of investigating accounts, to which, when long and complicated, a jury is altogether incompetent. But it is said for the defendants that here there is no complication and no mutual account, because the plaintiff has no accounts against the defendants. But the argument is not ingenuous. The plaintiff and defendants may not literally have (418) accounts with each other; but the claim of the plaintiff against the defendants involves the administration, for about eight years, of a considerable estate; and that may be said necessarily to include numerous charges and discharges, and to constitute a case and matter of accounts fit to be settled in this Court. It stands much on the footing of a suit by an administrator de bonis non against the executor of a first administrator, in which, although trover or determine might lie for the specific things, and assumpsit for money collected it is the constant course to proceed in equity. If, in such a case, the plaintiff were to proceed by actions at law and injustice were done therein to the other *Page 340 
party for want of just allowances for disbursements or charges, it would seem impossible that a court of equity would allow the plaintiff at law to raise the money from the other party until the accounts had been taken here and all proper credits ascertained. It is for the advantage of the defendants themselves that this jurisdiction should be exercised in the first instance. We think therefore, if there were nothing peculiar in this case, the bill would be proper.
But here a part of the plaintiff's demand is of a nature of which there is no jurisdiction at law, that is, the sums collected by the defendants on the debts of Ralston and Perkins, and the value of the effects released or assigned by them to Perkins. In those effects the legal interest vested in the surviving partner, and the administrator of the deceased partner can only claim in equity. It be said the plaintiff must go against Perkins for that demand, the answer is that he has a right to follow the fund in the hands that hold it, and that he may treat the defendants as his agents in the transaction; and for that reason he may call them before this Court for that equitable demand. Upon either ground, we think the jurisdiction proper; and especially upon the pleadings as framed in this cause. The bill does not charge the defendants with procuring the will by improper means, or endeavoring to obtain the probate or uphold it by fraud or falsehood; but alleges only that in fact it was not the will of the deceased, and that the defendants were induced to resist all the claims of the next of kin solely for (419) their own personal advantage, as supposed legatees in the paper.
That conduct is consistent with honesty of purpose. Hence the defendants are not treated as willful wrongdoers, or called on to answer as tort feasors; but the bill is simply for an account of the transactions in which these defendants assumed to act as executors, and therefore as trustees or quasi trustees. We think they are liable to an account in such a case, and they are to account precisely upon the principles upon which they would have been liable if they had in reality possessed the character of executor, with which they though themselves invested. They are chargeable with what came to their hands of the trust fund, with such part thereof as they may have released or disposed of for purposes of their own; and they must make good what may have been lost by their bad faith or gross neglect. They are entitled to be credited with all sums paid in discharge of debts owing by the deceased; for in the hands of the plaintiff the fund would have been thus far chargeable, and, consequently, such payments are proper deductions in favor of the defendants. But that is not all, for we think the defendants are likewise entitled to a fair compensation for services done to the estate in the administration of it, and to be credited with all payments under the supposed will, at least before they had a ground of reasonable belief *Page 341 
that the paper was not a will, as it purported to be. Heel v. Stovell, cited at the bar, from Ch. Cas., 126, and 8 Vin., Abr., 169, is founded on this principle. There the widow was allowed for payments of legacies given by the will, though it turned out to be no will. The court of competent jurisdiction having pronounced the instrument to be a will, an innocent person may safely act under the sentence until it be recalled; and when called to account in a court of equity — however it may be at law — such person ought not to be made personally responsible for moneys paid while the sentence was in full force, and properly paid according to a due course of administration under the instrument. If the executor of such a paper is chargeable as a trustee, then he is entitled to a trustee's privileges, and ought not to answer out of his own estate but for willful default or culpable negligence. Honest intentions and reasonable diligence should protect him for loss, as well as (420) other trustees.
These reasons satisfy the Court that the bill ought not to be dismissed, but that the plaintiff is entitled to relief on it. They also enable us to dispose of most of the exceptions upon what seems to us proper principles, and we shall now proceed to pass on them.
The defendant Telfair excepts to the report for charging the defendants with the value of the goods and debts assigned or released to Perkins. It is said the defendants did not receive them, and that the plaintiff may have redress against Perkins himself, as surviving partner, and, therefore, ought not to come against these parties. So far as Ralston was indebted to Perkins, and so far as Perkins was entitled for his share in the firm of Ralston Perkins, the allowance to him by the defendants was proper; and they must have credits therefore when the amounts shall be ascertained. The master has fixed the debt to Perkins as $1,000, and thus far we know the proper credit. But he has not ascertained what profits Ralston Perkins made, nor the share thereof belonging to Perkins. It must, therefore, be referred again to him to make inquires upon those points. The excess in value of the articles received or kept by Perkins over and above the debt to him and his share of the profits the defendants might have recovered from Perkins, for he had not right to them. But it is said they did not recover the excess, and therefore ought not to be held answerable. We think they ought to be charged with that excess if Perkins was able to pay, and has since become unable to pay it, simply upon the ground that they made no effort to settle and collect that demand, but suffered it to be lost. But whether Perkins be now solvent or not does not seem material, for the defendants not only suffered the debt to remain uncollected, but expressly sanctioned, by their agreement with Perkins, his retaining the goods. Was this agreement made for the benefit of the estate, or for that of the *Page 342 
parties to it personally. Very clearly, the latter. It was the price of buying off Perkins' caveat (which, to be sure, was unauthorized), and also of inducing him to forego his commission on collecting the (421) debts, and to surrender the bonds to the executors. Now, the executors then claimed all the property beneficially as legatees, and it is thence plain that they have not only appropriated this amount of the assets, but that they did it for purposes of their own. For such purposed they must pay their own money, and, therefore, are justly chargeable with such parts of the estate as were thus used.
The report submits it to the court whether the defendants are chargeable with hires for the negroes which the will directed to be emancipated, from whom the defendants made no profit, as they were allowed to work for themselves. It charges, however, for the hires of the other negroes, and among them, for Abram and Eunice, whom it appears the defendants sold, and of whom the plaintiff, since he administered, has obtained possession. As to the emancipated slaves, we think the defendants are not liable for their hire. It is clear they acted in that respect from a regard to the supposed wishes of their testator, for as matters then stood they would themselves have had the profits of those slaves, if any. With respect to the hires of the others, the defendants are liable, as far as they received or ought to have made them. Therefore, the second exception of Telfair is overruled, except as to the hires of Abram and Eunice. As those two negroes appear to have been sold, we are at a loss to know how their hires are charged, and how they came again into the plaintiff's possession. Therefore, without allowing or disallowing this exception as to them, or the 7th exception of the defendant Blount, it must be referred back to inquire and state, in respect to those two slaves, when they were sold, by whom, to whom, and for what price respectively, and whether the price has been accounted for, and by whom and if they have come to the hands of the plaintiff, when and by what means.
The master states that here refused to credit the defendants with the legacy to Gorham; and for that cause Telfair further excepts. The report does not state the ground of the refusal; but although the fact of its payment is not expressly found, yet it is not denied in the report, and therefore we infer that the master was of opinion that they were not entitled to credit for the legacy, although they had in fact (422) paid it. For the reasons already given, the Court is of the contrary opinion, and, therefore, on the third exception, it must be again referred to inquire what sum the defendants paid on that account, and when it was paid.
The fourth exception of Telfair is that he is charged with various sums for bad debts which were not collected, and the plaintiff has taken *Page 343 
numerous exceptions to the report because the defendants are not therein charged with various debts that are specified, inasmuch as the debtors were able to pay, and the defendant ought to have collected them. The exception of the defendant does not object to the charging of any debt in particular, and therefore we take it as being intended to bring forward the general principle of their liability on account of laches, for more than they actually received. Upon that question our opinion has been already expressed, and the fourth exception of Telfair must be accordingly overruled. Upon the exceptions of the plaintiff, it is to be remarked that the defendants are chargeable only in plain cases of laches; and in this case the presumption that they intended to do their duty, and did it, is very strong, because at the time they were acting, as was thought, for their own benefit exclusively. Upon this principle the Court overruled all the plaintiff's exceptions, as being unfounded in fact, except the fifth, which is allowed only as far as it respects the balance of the debt of Joshua Smith, and the eleventh and thirteenth, which are overruled.
The defendants claimed credits before the master as in their answers, for large sums paid for the expenses of the suits mentioned in the pleadings, but they were not credited, and they have excepted. With respect to the costs of the suit in the court of equity, brought by Samuel Ralston, the father, there is no pretense for charging them in this cause. The court, having a discretion, disposed of the costs by the decree in that case, as was fit. Besides, the demand was not against the defendants, as executors, but was founded on a construction of the paper, supposing it to be a will, which would give the plaintiff the right to the residue of the estate, by way of trust arising on the gift to the defendants, and the defense was founded on the opposite construction, namely, that the gift to the defendants was not in trust, but absolute. It is (423) plain, therefore, that the defendants were contending for their own interests, and not defending for the benefit of others, rights committed by the testator to the protection of the defendants. As they were contending for themselves, it follows that the expenses ought to be met out of their own means.
The costs of the proceedings to recall the first probate, and of the attempt to obtain a second, stand, in point of form, upon a different footing. According to Mariner v. Bateman, 4 N.C. 350, which we entirely approve, the costs might form a just burden on the assets; for an executor acting entirely or mainly for the benefit of other persons provided for in a supposed will, must be protected from loss by a faithful, or what was properly deemed a faithful, effort to carry into effect the apparent will. But in the present case it is obvious that the contest was on the part of the defendants, for themselves, and solely for *Page 344 
themselves, just as much as it was on the part of the next of kin for his benefit. The costs of the litigation ought equitably to follow the fruits of litigation. In substance, the suits were to determine which of the parties to them were entitled to the property, and that one who lost the cause ought to pay the costs. The fifth exception of Telfair is therefore overruled.
The same defendant has also excepted because the master allowed no commissions to the defendant. From what has been already said, it follows that this exception is well founded, so far as respects a just compensation for the time and labor employed in the service of the estate, and it must be referred to the master to inquire of and fix a proper allowance on that basis.
It remains only to dispose of the exceptions taken by Mr. Blount, which may be soon done. The first is overruled, as being unfounded in fact; as are also the third and fifth, for the same reason. The second respects the transactions with Perkins, and therefore falls within the order made upon the first exception of Telfair for a further inquiry. The fourth respects the legacy of Gorham, and therefore falls within the order made upon the third exception of Telfair, and must (424) accordingly await that inquiry. The sixth objects to the defendants being charged with the sums received from Perkins as surviving partner, upon the ground that as such partner Perkins is the owner. The money was actually received by the defendants, and it was equitably due to the representative of Ralston, and, therefore, must be accounted for by the defendants, and, consequently, this exception is overruled. The seventh has been already disposed of, in the order respecting the slaves Abram and Eunice.
The eight objects that after the two commissioners united in the report, and signed it, one of them altered it without the privity of the other. This is not a fit matter of exception, and therefore it is overruled. If the objection be true in point of fact, the party should have verified it on affidavit, and applied to set aside the whole report, or restore it to its first form.